# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| TAMA S. BINKLEY, | ) | CASE NO. 5:17-cv-1666 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| CHARLES H. SCHUSTER, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court are the following motions: (1) motion to dismiss of defendant Tim Hostetler ("Hostetler") for failure to state a claim (Doc. No. 9 ["MTD Hostetler"]); and (2) motion to dismiss of defendant Charles H. Schuster for lack of subject matter jurisdiction, failure to state a claim, and failure to plead fraud with particularity (Doc. No. 10 ["MTD Schuster"]). Plaintiff Tama S. Binkley ("Binkley") filed her opposition to each motion (Doc. No 12 ["Opp'n Hostetler"]; Doc. No. 13 ["Opp'n Schuster"]), and each defendant filed a reply (Doc. No. 15 ["Reply Hostetler"]; Doc. No. 14 ["Reply Schuster"]). For the reasons set forth herein, Hostetler's motion is granted as to the federal claims in the first and second counts of the complaint; the remainder of the claims are dismissed without prejudice, rendering Schuster's motion moot.

## I. BACKGROUND

The following factual allegations in the complaint filed on August 9, 2017 are taken as true for purposes of the instant motions. Binkley alleges that, from September 2011 until August 2015, she and Schuster were engaged to be married. (Doc. No. 1, Complaint ["Compl."] ¶ 17.) During the course of their relationship, they purchased a home together at 3015 Midvale Road NW, Canton, Ohio. (*Id.* ¶ 18.) In June 2014, they also purchased a timeshare in Mexico through Sirenis

Premium Travelers ("Sirenis"). (*Id.* ¶ 19.) At the time of purchase, they were listed as co-owners who were both responsible for the loan. (*Id.* ¶¶ 20-21.) The couple's relationship ended in August 2015. On September 28, 2015, Stark County Common Pleas Court granted Schuster a civil protection order ("CPO") against Binkley. (*Id.* ¶ 22; MTD Schuster, Ex. A.[1]) On February 22, 2016, Schuster filed a lawsuit against Binkley in Stark County Common Pleas Court seeking partition of the home they purchased together and replevin of personal property. (Compl. ¶ 23.)

On or about August 10, 2016, Binkley contacted Sirenis requesting a copy of the paperwork she had previously signed, and inquiring how much was owed on the loan she had co-signed for the timeshare property. (*Id.* ¶ 25.) During this call, Binkley spoke to "Carlos," asking him to email or mail the relevant paperwork; she supplied Carlos with her email, mailing address, and telephone number. (*Id.* ¶¶ 30-31.) Following that call, Carlos sent an email to Schuster indicating: "I am getting in touch with you as we received . . . a call from a lady named Tama Binkley who was the co-owner at the time you requested her name to be removed, and it was signed by both of you. Mrs. Binkley is requesting payment information as well as a copy of the Agreement. Please let us know if you are ok on that." (*Id.* ¶ 32.)[2]

---

[1] Federal courts may take judicial notice of related "'proceedings in other courts of record[.]'" *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 972 n.5 (6th Cir. 2005) (quoting *Rodic v. Thistledown Racing Club, Inc.*, 615 F.3d 736, 738 (6th Cir. 1980)); Fed. R. Evid. 201). In addition, it is well settled that, in ruling on a Rule 12 dispositive motion, a district court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted); *see Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (citation omitted); *see also Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (court may consider documents that govern a party's rights and are necessarily incorporated by reference in the complaint on a motion to dismiss) (citations omitted). Doing so does not convert this motion to dismiss into a motion for summary judgment.

[2] Although the complaint (as well as the brief in opposition to Hostetler's motion to dismiss) purport to quote verbatim from this email, no copy of the email has been supplied by any party.

On August 11, 2016, Schuster signed a criminal complaint with the Stark County Sheriff's Office "alleging Binkley violated the CPO by hacking into a business account with Sirenis Partners and changing all the account information." (*Id.* ¶ 33.)[3] (*See also* MTD Schuster, Ex. D; MTD Hostetler, Ex. A.)

On August 16, 2016, defendant Hostetler, a Stark County Deputy Sheriff, obtained a warrant for Binkley's arrest for violating the CPO. (Compl. ¶¶ 34, 42; *see also* MTD Schuster, Ex. E at 125.[4]) Binkley alleges that Hostetler obtained the warrant based upon intentionally misleading information supplied by Schuster (in particular, that the timeshare was for business), which Hostetler failed to identify due to his improper investigation. (*Id.* ¶¶ 39, 43-45.)

On September 28, 2016, following an unsuccessful mediation in the civil case Schuster had filed against her, Binkley was arrested on the warrant while she was still at the Stark County Common Pleas Courthouse. (*Id.* ¶¶ 52-54.) Binkley was booked, fingerprinted, photographed and held at the Stark County Jail for about thirty (30) hours until a $100,000 cash bond was posted. (*Id.* ¶¶ 55-56.) On January 12, 2017, the morning of her scheduled trial, the prosecuting attorney dismissed the charge due to insufficient evidence. (*Id.* ¶¶ 58-59.)

Binkley alleges that she was unaware of the warrant for her arrest, that Schuster was familiar with the workings of the judicial system because of previous experience in law enforcement, and that he, with the help of Hostetler, used the criminal case as leverage for the civil case. (*Id.* ¶¶ 60-66.)

---

[3] Schuster's sworn criminal complaint says: "The individual, Tama Binkley, accessed my email … hacking into an account with Sirenis Partners. She then changed all the account information to her profile." (MTD Hostetler at 70.)

[4] All page number references are to the page identification number generated by the Court's electronic docketing system.

Binkley's complaint sets forth two claims against Hostetler under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments (arrest without probable cause/wrongful imprisonment and malicious prosecution). She asserts state common law claims against Hostetler for false arrest/imprisonment and gross neglect, and against both Hostetler and Schuster for malicious prosecution, infliction of emotional distress, abuse of process, and unlawful conspiracy. Finally Binkley asserts a state law claim against Schuster only for fraudulent transfer.

## II. STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id*. at 556, n.3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts").

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true," to state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—'that the pleader is entitled to relief[.]'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). In such a case, the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [and the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 683 (citation omitted).

A complaint need not set down in detail all the particulars of a plaintiff's claim. However, "Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79 (This standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555); *see Gregory v. Shelby Cty.*, 220 F.3d 433, 446 (6th Cir. 2000) (the court should not accept conclusions of law or unwarranted inferences couched in the form of factual allegations) (citations omitted). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (emphasis in original) (internal quotations marks, citation, and additional citations omitted), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001).

### III. DISCUSSION

Binkley's complaint bases this Court's original jurisdiction on her two § 1983 claims against Hostetler. All her state law claims (including all claims against Schuster) are based on the Court's supplemental jurisdiction. Therefore, the Court will address Hostetler's motion first.

A.  **Hostetler's Motion to Dismiss - Federal § 1983 Claims**

Hostetler moves to dismiss the complaint against him under Fed. R. Civ. P. 12(b)(6) for failure to state a claim under § 1983 with respect to either count one or count two.

Binkley alleges that Hostetler caused her to be arrested[5] and/or imprisoned wrongfully in violation of the Fourth and Fourteenth Amendments, and to be subject to malicious prosecution, because her arrest was without probable cause, all in violation of 42 U.S.C. § 1983.

1.  **Section 1983 Claim -- Arrest Without Probable Cause**

Hostetler argues that, even taking the facts alleged in the complaint as true (which the Court must do on a motion to dismiss), Binkley has not stated a claim under § 1983 for arrest without probable cause. Hostetler points to the express finding of probable cause by the state court judge. (MTD Hostetler at 65 and Ex. B.) He argues that the face of the complaint reviewed by the state court judge contains the same allegations sworn to by Schuster in his complaint relayed to Hostetler, namely, that Binkley accessed his business account in violation of the CPO. (*Id.* at 65-66.)

In opposition, Binkley argues that false and misleading statements and omissions by Hostetler (a fact only generally alleged in the complaint) led to the finding of probable cause by the state court judge. (Opp'n Hostetler at 141-42.) She cites *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010) for the proposition that "Hostetler's omissions could be material to a finding of probable cause[,]" because "[n]ot only do the omitted facts suggest that Binkley's actions were justified but they also severely undermine Schuster's reliability." (*Id.* at 142.) Binkely appears to be suggesting that Hostetler, although having a copy of the email from "Carlos" to Schuster (*see* Compl. ¶¶ 32,

---

[5] Hostetler was the investigating officer who obtained the arrest warrant, but he was not the arresting officer. (*See* MTD Hostetler, Ex. B; MTD Schuster, Ex. E.)

35), did not supply that email to the state court judge when he sought the arrest warrant, but only supplied Schuster's complaint, wherein Schuster claimed that Binkley had "hacked into" his account. (*Id.* at 146; *Id.*, Ex. 2 at 160.) She identifies this as the kind of "omission" that could negate the finding of probable cause for arrest for violation of the CPO. She claims this is sufficient to withstand a Rule 12(b)(6) challenge on this claim against Hostetler.

In reply, Hostetler notes that this specific allegation of an omission of this email by Hostetler was not alleged in the complaint, but was only raised for the first time with this specificity in the opposition brief. (Reply Hostetler at 263.) The complaint itself, argues Hostetler, "contains only conclusory recitations and no factual allegations to support them." (*Id.* at 264.)

"[F]or a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2001) (citation omitted). "A police officer has probable cause if there is a fair probability that the individual to be arrested has either committed or intends to commit a crime." *Id.* (quotation marks and citations omitted). "An arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest or false imprisonment made pursuant to § 1983." *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005) (footnote omitted) (citing *Baker v. McCollan*, 443 U.S. 137, 143-44, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979)).

Here, even if the complaint had alleged that Hostetler did not provide the relevant email to the state court judge (which it does not allege), that fact would not negate probable cause for the arrest. All that is necessary for probable cause is "a fair probability that the individual to be arrested has . . . committed . . . a crime." *Fridley*, 291 F.3d at 872.

Under Ohio Rev. Code § 2919.27(A)(1) and (B)(2), it is a misdemeanor of the first degree to violate a protective order issued under Ohio Rev. Code § 3113.31. The CPO herein was issued

7

under § 3113.31. (*See* Hostetler Opp'n, Ex. 1 at 153.) The CPO provided that Binkley "shall not … interfere with the residence, … business, … employment, … of the protected persons named in this Order[.]" (*Id.* at 154 ¶ 4.) Additionally, the CPO provides that Binkley "shall not initiate or have any contact with [Schuster] . . . or [his] residences, [or] businesses . . . . Contact includes . . . communications by any other means directly or through another person." (*Id.* at 155 ¶ 6.) The CPO further provides, in a "Notice to Respondent," that "[i]f you violate any terms of this order . . . you may be arrested." (*Id.* at 158.) Binkley signed and agreed to the terms of the CPO. (*Id.*) An attachment to the CPO addressed to law enforcement agencies and officers directed: "If you have reasonable grounds to believe that Respondent/Defendant has violated this Protection Order, it is the preferred course of action in Ohio under R.C. 2935.03 to arrest and detain Respondent/Defendant until a warrant may be obtained." (*Id.* at 159.)

Even if the state court judge would have had the relevant email, instead of refuting probable cause, it would only have bolstered Schuster's sworn assertion that Binkley had inappropriately interfered with his business and/or accessed (*i.e.*, "hacked" -- to use Schuster's word), or at least attempted to access, Schuster's information at Sirenis through Carlos. (*See id.* Ex. 2 at 160.) By itself, this "contact . . . through another person" was a violation of a "term[] of [the CPO,]" which prohibited such contacts. (*Id.* at 155.) It is of no consequence that Binkley claims to have felt justified in making that contact and in believing that the email somehow exculpated her. The CPO ordered her to have no contact either directly or indirectly, and clearly notified her that, if she "violate[d] any terms of [the] order, . . . [she] may be arrested." (*Id.* at 158.)

Under the facts alleged in the complaint, taken as true, Binkley has not stated a § 1983 claim against Hostetler for arrest without probable cause. Hostetler is entitled to dismissal of this claim.

### 2. Section 1983 Claim -- Malicious Prosecution

"To prevail on a § 1983 malicious-prosecution claim premised on a Fourth Amendment violation, a plaintiff must prove that: (1) the defendant made, influenced, or participated in the decision to prosecute; (2) probable cause was lacking for the criminal prosecution; (3) as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor." *Alexander v. Carter for Byrd*, No. 17-5834, 2018 WL 2059526, at *3 (6th Cir. May 2, 2018) (citing *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010)).

The Court has already determined Binkley's failure to plead sufficient facts to establish lack of probable cause for her arrest. She also fails to show that the charge against her, which was ultimately dismissed without prejudice, was terminated in her favor. Under Ohio law, a prosecution that is dismissed without prejudice "is not indicative of guilt or innocence and, therefore, is not a termination in favor of the accused." *Ash v. Ash*, 651 N.E.2d 945, 948 (Ohio 1995) (citations omitted). In addition, Binkley has not alleged the element of "a deprivation of liberty *apart from* the initial seizure[.]"

For these reasons, Binkley fails to state a claim of malicious prosecution under § 1983 against Hostetler. Hostetler is entitled to dismissal of this claim.

### 3. Conclusion - Federal § 1983 Claims

The two § 1983 claims against Hostetler are dismissed with prejudice. To that extent, his motion to dismiss (Doc. No. 9) is granted.

### B. State Law Claims

Aside from the first and second claims that are now dismissed, the remainder of the complaint asserts only state law claims against Hostetler and/or Schuster, which are before the

Court on the basis of supplemental jurisdiction. "[W]hen, as here, 'all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims.'" *Spencer v. Cty. of Huron*, 717 F. App'x 555, 559 (6th Cir. 2017) (quoting *Booker v. City of Beachwood*, 451 F. App'x 521, 523 (6th Cir. 2011) (further citation omitted)).

Aside from the two motions to dismiss (which were not fully briefed until December 13, 2017), no other action has occurred in this case. There has been no case management plan set and no discovery has occurred. Therefore, there is no prejudice to any party if the Court exercises its discretion to decline supplemental jurisdiction over the remaining state law claims.

## IV. CONCLUSION

The Court grants in part Hofstetler's motion to dismiss and dismisses the two § 1983 federal claims with prejudice. Further, the Court declines to exercise jurisdiction over the state law claims, dismissing them all without prejudice. *See* 28 U.S.C. § 1367(c)(3).

**IT IS SO ORDERED**.

Dated: June 11, 2018

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**